UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WENDELL COLEMAN,<br><br>    Plaintiff,<br><br>    v.<br><br>ELIA ORTIZ,<br><br>    Defendant. | Case No. 20-cv-03356-SI<br><br>**ORDER OF DISMISSAL WITH LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 1, 2 |

**INTRODUCTION**

Wendell Coleman filed this *pro se* civil rights action under 42 U.S.C. § 1983. The complaint is now before the court for review pursuant to 28 U.S.C. § 1915(e). This order also addresses plaintiff's request for a temporary restraining order.

**BACKGROUND**

Plaintiff complains about various events that allegedly occurred in the criminal prosecution against him. He alleges that many charges were dismissed and some failed to result in convictions, *see* Docket No. 1 at 4, but concedes that there was a guilty verdict on at least one charge, *id.* at 8 ("jailed immediately after guilty verdict"). Some of the charges were for crimes against Kendra Baumgartner, who apparently was his girlfriend or former girlfriend. The complaint names many defendants, and makes the following claims:

A.      <u>Claims Against Prosecutors, Judge, And Probation Officer</u>

District Attorney Haley allegedly ignored her duty to investigate crimes committed against plaintiff and filed malicious and false charges against plaintiff. Docket No. 1 at 4. She allegedly

refused to "test false statements made by [a] witness" or investigate the witness' perjury. *Id.*

Deputy District Attorney McLeod allegedly filed malicious and false charges against plaintiff. *Id.* at 6-7. She allegedly "attempted to have [plaintiff] given forced court ordered medication without any of the criteria met in a hearing held in 2018" and relied on a false report from Dr. Boardman (that apparently addressed plaintiff's mental state or need for involuntary medication). *Id.* at 6-7. She allegedly sent fraudulent documents to the court. *Id.* at 7. McLeod also sought allegedly unjustified and untimely continuances in the criminal cases against plaintiff. *Id.* at 6.

Deputy District Attorney Lind allegedly failed to investigate properly and filed malicious and false charges against plaintiff. *Id.* at 7-8. She allegedly called plaintiff names during her examination of him, requested remand, and did not call all of her listed witnesses. *Id.* at 7-8. She allegedly "knowingly and willingly denied the fact that [a] 'witness'. . . committed perjury" and "participated in the trial with unclean hands." *Id.* at 8.

Judge Ortiz allegedly participated in "an attempted kidnapping and malicious prosecution." *Id.* at 5. She allegedly "forced [plaintiff] to participate in a trial in December of 2019 without any witnesses, and without having the opportunity to review the newest discovery." *Id.* Judge Ortiz allegedly made improper rulings in plaintiff's criminal case when she: allowed a doubt to be declared about plaintiff's competence; denied his right to counsel and self-representation; raised his bail; denied a continuance; allowed perjured testimony; disallowed a recusal motion; allowed time-barred misdemeanors to be charged; denied a request to investigate a juror; and required an ankle monitor and remand after trial. *Id.* Judge Ortiz also allegedly awarded custody of a child to a reported child molester in March 2016, although the mother was able to fight this. *Id.* She allegedly denied plaintiff's rights under the Fourth, Fifth, Sixth, and Eighth Amendments, and abused her power as a judge. *Id.* at 6.

In March 2018, probation officer Butler allegedly fabricated a probation report based on false accusations and failed to investigate properly before preparing that report. *Id.* at 10. She allegedly tainted plaintiff's reputation by stating that he failed to appear for a presentence report. *Id.* She allegedly acted with the intent to assist in malicious prosecution against plaintiff. *Id.*

2

B.     Claims Against Law Enforcement Defendants

Napa County Sheriff's deputy Bohlander allegedly refused to investigate plaintiff's stolen property or plaintiff's report that people were using illegal drugs and having sexual intercourse at his home in the presence of his child. *Id.* at 9.

In January 2018, Napa County Sheriff's deputy Branco allegedly went through plaintiff's fence, entered his backyard, and opened his back door to serve an arrest warrant with his service weapon pointed at plaintiff. *Id.* Branco also allegedly "made an attempt on [plaintiff's] life" in May 2017 when he showed up at a property "with the intent to shoot [plaintiff]" after Baumgartner informed law enforcement that plaintiff was "known for carrying shotguns." *Id.*

In October 2017, Napa County Sheriff's deputy Lichau allegedly "violated [plaintiff's] civil rights by falsely arresting [him], not respecting [his] right to remain silent, illegally searching [him], charging [him] for having expired registration, and outdated insurance, and an expired DL, none of which was true." *Id.* Plaintiff alleges that he "won in April of 2019 against all frivolous charges." *Id.*

In November 2017, seven unnamed deputy sheriffs allegedly went to plaintiff's home and "threatened to kick [his] ass." *Id.* at 10.

The Napa County Sheriff's Department allegedly harassed and stalked plaintiff, making threats to his safety. *Id.* at 9-10. The Napa police allegedly harassed plaintiff as well.

In June 2017, Napa police officer Haggmark allegedly failed to investigate evidence from plaintiff. *Id.* at 10.

**DISCUSSION**

When an unincarcerated plaintiff is proceeding *in forma pauperis*, the court must dismiss the case upon determining that the case is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e). *Pro se* complaints must be liberally construed. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

3

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

The complaint fails to state a claim against any particular defendant and therefore must be dismissed. Leave to amend is granted so that plaintiff may attempt to file an amended complaint that cures the deficiencies discussed in this order.

A.      Claims Against Prosecutors, Judge, And Probation Officer

Plaintiff's claims against District Attorneys Haley, McLeod, and Lind are dismissed without leave to amend because they have absolute prosecutorial immunity for the actions alleged in the complaint, which all pertain to the criminal prosecution of plaintiff in state court. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 272-73 (1993). The prosecutorial immunity applies to the claims that Haley, McLeod, and Lind each allegedly filed malicious, frivolous, and/or false charges against plaintiff because they have immunity for their alleged decisions relating to their charging decisions and their conduct in trying the cases against plaintiff. *See Van De Kamp v. Goldstein*, 555 U.S. 335, 344 (2009) (prosecutors absolutely immune for certain administrative obligations "directly connected with the conduct of a trial," such as supervision, training and information-system management, because these obligations "necessarily require legal knowledge and the exercise of related discretion"). The prosecutorial immunity also extends to the claims that Haley allegedly refused to "test false statements made by [a] witness," *see* Docket No. 1 at 4, that McLeod used a false report from Dr. Boardman, and that Lind allegedly "knowingly and willingly denied the fact that [a] 'witness'. . . committed perjury," *see id.* at 8, because prosecutors are absolutely immune from liability for the knowing use of false testimony at trial. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976).

Plaintiff's claims against Judge Ortiz are dismissed because she has absolute immunity from civil liability for damages for acts performed in her judicial capacity. *See Pierson v. Ray*, 386 U.S. 547, 553-55 (1967). Judicial immunity is an immunity from suit for damages, not just from an

4

1  ultimate assessment of damages. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The judge will not be deprived of immunity even if her actions were done maliciously, in error, or in excess of her authority. *See Stump v. Sparkman*, 435 U.S. at 356-57. With one potential exception, Judge Ortiz has absolute immunity for the conduct alleged in the complaint because all but one allegation complain of rulings Judge Ortiz made or failed to make in the criminal case. The one exception is plaintiff's allegation that Judge Ortiz participated in an "attempted kidnapping," Docket No. 1 at 5; although this appears to be hyperbole about her rulings in plaintiff's criminal case, leave to amend is granted so that plaintiff may allege facts, if he has them, that plausibly suggest the judge took part in an attempted kidnapping.[1]

Plaintiff's claim against probation officer Butler is dismissed without leave to amend, because, like prosecutors and judges, probation officers possess absolute immunity from damage suits under § 1983 for official functions bearing a close association to the judicial process. *See Demoran v. Witt*, 781 F.2d 155, 156-58 (9th Cir. 1985) (immunity for preparing reports for use by state courts). State actors are granted absolute immunity from damages liability in suits under § 1983 only for actions taken while performing a duty functionally comparable to one for which officials were immune at common law. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003). Under the common law, judges, prosecutors, trial witnesses, and jurors were absolutely immune for functions that were critical to the judicial process. *Id.* at 896. Here, Butler has absolute immunity against plaintiff's claim against her because preparing probation reports constitutes a function that is critical to the judicial process.

B.   Claims Against Law Enforcement Defendants

Deputy Bohlander: Plaintiff's claim that deputy Bohlander refused to investigate plaintiff's reports of criminal activity is dismissed without leave to amend. "Generally, 'the Fourteenth Amendment's Due Process Clause . . . does not confer any affirmative right to governmental aid'

---

[1] Plaintiff also lists four other judges in his complaint, but makes no allegations against any of them. Docket No. 1 at 3. These judges also would have absolute judicial immunity against claims about their judicial decision-making.

5

and 'typically does not impose a duty on the state to protect individuals from third parties.'" *Henry A. v. Willden*, 678 F.3d 991, 998 (9th Cir. 2012) (citing *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011)); *see also Castle Rock v. Gonzales*, 545 U.S. 748, 768 (2005) (the benefit a third party might receive from having someone else arrested for a crime generally does not trigger due process protections). There are two exceptions to this rule: (1) the "special relationship" exception when "a custodial relationship exists between the plaintiff and the State such that the State assumes some responsibility for the plaintiff's safety and well-being," *id.* (citing *DeShaney v. Winnebago Cnty Dep't of Soc. Servs.*, 489 U.S. 189, 198-202 (1989)) and (2) the "state-created danger" exception, "when the state affirmatively places the plaintiff in danger by acting with deliberate inference to a known and obvious danger" *id.* (citing *Patel*, 648 U.S. at 971-72). Here, these limited exceptions do not apply under the facts alleged.

Deputy Haggmark: The complaint also does not state a claim against Officer Haggmark, who allegedly failed to investigate plaintiff's evidence. As stated above, the Fourteenth Amendment's Due Process Clause does not confer any affirmative right to government aid and neither of the two exceptions applies to the facts alleged here. *See* Henry *A*, 678 F.3d at 998.

Deputy Branco: The complaint does not provide enough details for the court to determine whether a claim is stated based on the allegations regarding the service of the arrest warrant in January 2018. The Fourth Amendment requires that law enforcement officers ordinarily give notice of their authority and purpose before making an entry of premises for purposes of a search or to arrest a person therein. *See Wilson v. Arkansas*, 514 U.S. 927, 934 (1995). Plaintiff alleges that Branco went through plaintiff's fence, entered his backyard, and opened his back door with weapon in hand to serve an arrest warrant on plaintiff, but he does not allege where plaintiff was or what he was doing at the time Branco was attempting to serve the arrest warrant, so as to suggest that Branco's actions were unreasonable. Having a weapon drawn does not automatically amount to a Fourth Amendment violation especially when, as here, law enforcement officials have information suggesting plaintiff may be armed. *Cf. United States v. Guzman-Padilla*, 573 F.3d 865, 884 (9th Cir. 2009) ("officers with a particularized basis to believe that a situation may pose safety risks may handcuff or point a gun at an individual without converting an investigative detention into an

6

1   arrest"); *McNair v. Coffey*, 279 F.3d 463, 466-67 (7th Cir. 2002) (arrest for traffic offenses at
2   gunpoint and with police in eight squad cars as back-up did not violate the Fourth Amendment).
3   Leave to amend is granted so that plaintiff may attempt to allege facts showing an unreasonable
4   search or seizure under the Fourth Amendment in the service of the arrest warrant.

5         Plaintiff's allegation that, on a different occasion in May 2017, deputy Branco "made an
6   attempt on [plaintiff's] life" when he showed up "with the intent to shoot [plaintiff]," Docket No.1
7   at 9, fails to state a claim.  (At the time, law enforcement officials allegedly had been notified that
8   plaintiff was known to carry a shotgun.)  Although a complaint "does not need detailed factual
9   allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires
10  more than labels and conclusions, and a formulaic recitation of the elements of a cause of action
11  will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative
12  level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  The allegation
13  that Branco showed up with an intent to shoot plaintiff is conclusory and speculative; it does not
14  provide "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  Leave to
15  amend is granted so that plaintiff may attempt to allege facts showing a Fourth Amendment violation
16  for this alleged event.

17        <u>Deputy Lichau</u>:  Plaintiff alleges that Lichau "violated [plaintiff's] civil rights by falsely
18  arresting [him], not respecting [his] right to remain silent, illegally searching [him], charging [him]
19  for having expired registration, and outdated insurance, and an expired DL, none of which was true."
20  Docket No. 1 at 9.  Plaintiff's conclusory allegations fail to state a claim against deputy Lichau.

21        The Fourth Amendment requires that an arrest be supported by probable cause. *Atwater v.*
22  *City of Lago Vista*, 532 U.S. 318, 354 (2001); *Michigan v. Summers*, 452 U.S. 692, 700 (1981) (an
23  arrest is unlawful unless there is probable cause to support it).  An arrest is supported by probable
24  cause if, under the totality of the circumstances known to the arresting officer, a prudent person
25  would have concluded that there was a fair probability that the defendant had committed a crime.
26  *Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010).  Here, plaintiff fails to allege facts
27  plausibly showing that there was not probable cause for his arrest.  Merely stating that plaintiff was
28  falsely arrested is conclusory; plaintiff needs to allege facts in his amended complaint to support his

United States District Court
Northern District of California

7

conclusion.

The use of compulsive questioning in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), does not violate the Fifth Amendment and give rise to a claim for damages under 42 U.S.C. § 1983. *See Chavez v. Martinez*, 538 U.S. 760, 772 (2003). It is not until the compelled statements obtained in violation of *Miranda* are used in a criminal case that a violation of the Fifth Amendment's Self-Incrimination Clause occurs. *Id.* at 766-73. Plaintiff has not alleged facts showing that there was a *Miranda* violation and that the statements were used in his criminal case. Nor has he alleged any sort of conscience-shocking techniques used in the questioning that might suggest a due process violation in the police questioning itself. *See Martinez v. City of Oxnard*, 337 F.3d 1091, 1092 (9th Cir. 2003) (allegation that officer "brutally and incessantly questioned [suspect], after he had been shot in the face, back, and leg and would go on to suffer blindness and partial paralysis, and interfered with his medical treatment while he was 'screaming in pain ... and going in and out of consciousness'" stated a claim for a due process violation). Leave to amend is granted so that plaintiff may attempt to allege facts showing how deputy Lichau's failure to respect plaintiff's right to remain silent amounted to a violation of his right not to incriminate himself and/or his right to due process.

Unnamed Defendants: The allegation that seven deputies came to plaintiff's home and "threatened to kick [his] ass," Docket No. 1 at 10, fails to state a claim. The complaint does not suggest that this was anything more than a verbal insult. Plaintiff has not alleged facts suggesting the violation of any constitutional right by the comment of one or more deputies. If he can allege facts suggesting the violation of any constitutional rights, he needs to properly identify the alleged wrongdoers. If plaintiff does not know the true names of the alleged wrongdoers, he may use Doe defendant designations, e.g., John Doe # 1 and John Doe # 2. Although the use of Doe defendants is acceptable to withstand dismissal of the complaint at the initial review stage, using Doe defendants creates its own problem: those persons cannot be served with process until they are identified by their real names. The burden remains on the plaintiff; the court will not undertake to investigate the names and identities of unnamed defendants. Plaintiff must provide the true names and identities of any Jane Doe and John Doe defendants within 120 days of the date of this order or

they may be dismissed without prejudice to him filing another action against them. If there are multiple unknown persons, each unknown defendant must be identified as a separate John Doe or Jane Doe, e.g., John Doe # 1, Jane Doe # 1, Jane Doe # 2, etc., so that eventually each John Doe and Jane Doe defendant can be replaced by a separate person when his or her true name becomes known.

Municipal Defendants: The complaint does not state a claim against the Napa County Sheriff's Office or the Napa Police Department. There is no respondeat superior liability under Section 1983, that is, no liability under the theory that one is responsible for the actions or omissions of an employee. *See Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691 (1978). The mere fact that an individual wrongdoer was employed by a defendant would not be a sufficient basis on which to hold the employing defendant liable. Local governments, such as Napa County, are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort. *Id.* at 690. To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must show: "(1) that [the plaintiff] possessed a constitutional right of which [he] was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *See Plumeau v. School Dist. #40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (citations and internal quotation marks omitted). For municipal liability, a plaintiff must plead sufficient facts regarding the specific nature of the alleged policy, custom, or practice to allow the defendant to effectively defend itself, and these facts must plausibly suggest that the plaintiff is entitled to relief. *See AE v. County of Tulare*, 666 F.3d 631, 636-37 (9th Cir. 2012). It is not sufficient to merely allege that a policy, custom or practice existed or that individual officers' wrongdoing conformed to a policy, custom, or practice. *See id.* at 636-68. If plaintiff wants to allege a *Monell* claim against a municipal entity, he must be careful to allege the specific policy, custom, or practices of the municipal entity that he contends give rise to liability.

C.   Other Defendants

The following defendants are dismissed because plaintiff merely lists their names on the complaint without making any allegations against them: Judges Boessenecker, Price, Woods, and

9

1   Young; Napa County Sheriff's deputies Kuhn, Powers, and Dameron; and Napa police officers
2   Potter, Martinez, Delasi, and Cole.

### D. Page 12 of Complaint

Page 12 of the complaint states "Attention: Federal Judge" and has garbled language that appears to be of a threatening nature. Plaintiff writes that if the court does not protect his daughter — a nonissue in this case — "I will loose my hand do not make me loose your goods because of this.  I am your maker and your are my creation before God I command you to do my will in the name of the father or else I will come there." Docket No. 1 at 12 (errors in source). After that text, plaintiff inserted the definition and elements of the crime of murder. *Id.* And he placed on that message a palm print in red ink, which often is used as symbolic of blood. Plaintiff is strongly urged to carefully study 18 U.S.C. § 115 before writing anything of a similar nature.

### F. The Request For A Temporary Restraining Order

Plaintiff has filed a request for a temporary restraining order (TRO) that: (1) prevents "local law enforcement" from "continu[ing] to harass [him] and perform police misconduct without justifiable cause"; (2) suspends his state-court sentence and commands review of his trial by an appellate court; (3) removes Estelle Coleman (who apparently is his daughter) "from any and all restraining orders signed by any acting judicial member in Napa"; (4) prevents a "'victim' from filing additional false accusations" against him; and (5) imposes a "50/50 custody" arrangement that will not be "abused to trap either parent." Docket No. 2 at 3, 4.

A TRO preserves the status quo and prevents irreparable harm until a hearing can be held on a preliminary injunction application. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). A TRO is an "extraordinary remedy" that the court should award only when a plaintiff makes a clear showing that he is entitled to such relief. *See Winter v. Natural Res. Defense Council, Inc*., 555 U.S. 7, 24 (2008). The standards for a TRO are the same as those for a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff must demonstrate (1) a

likelihood of success on the merits, (2) a likelihood of irreparable harm that would result if an injunction were not issued, (3) the balance of equities tips in favor of the plaintiff, and (4) an injunction is in the public interest. *See Winter*, 555 U.S. at 20.[2] The irreparable injury must be both likely and immediate. *See id*. at 22.

Plaintiff is not entitled to the wide-ranging TRO he seeks. First, he does not show any likelihood of success on the merits of his claims in this action. The pleading deficiencies discussed in this order prevent the court from determining that there is any likelihood of success on the merits of his claims. Second, the evidentiary support for the requested TRO falls far short of showing that irreparable harm is likely and imminent if interim relief is not granted. "A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Services Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). Third, at least part of the dispute that forms the basis for the requested TRO is different from the allegations in the complaint and would not be the proper basis for interim relief. Plaintiff's request for a TRO regarding child custody is beyond the scope of the allegations of the complaint. A plaintiff is not entitled to injunctive relief based on claims not pled in the complaint because the "court's equitable power lies only over the merits of the case or controversy before it." *Pacific Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015); *see, e.g., id.* at 636-38 (district court properly denied plaintiff's request for an injunction to prevent HIPAA violation, where plaintiff had not asserted a claim for a HIPAA violation). Finally, even if the foregoing problems did not exist, plaintiff does not show the need for a TRO without any notice to the defendants, who have not yet been served with process in this action. *See* Fed. R. Civ. P. 65(b)(1) (TRO can issue without notice to adverse party only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable

---

[2] *Winter* did not, however, completely reject the validity of the sliding scale approach to preliminary injunctions. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011). Under the "sliding scale" approach used in the Ninth Circuit — also dubbed the "serious question" test in *Alliance for Wild Rockies* — "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.* at 1131. Thus, even after *Winter*, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* at 1132 (citations omitted).

11

injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and the movant certifies in writing the efforts to give notice and the reasons why notice should not be required). For the foregoing reasons, plaintiff's *ex parte* request for a TRO is DENIED.

## CONCLUSION

The complaint is dismissed with leave to amend. Plaintiff must file an amended complaint that complies with the directions in this order no later than **July 15, 2020**, and must include the caption and civil case number used in this order and the words AMENDED COMPLAINT on the first page. Plaintiff is cautioned that his amended complaint must be a complete statement of his claims. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) ("For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal. But for any claims voluntarily dismissed, we will consider those claims to be waived if not repled.") Failure to file the amended complaint will result in the dismissal of this action.

The amended complaint and all future filings must be double-spaced, regardless of whether they are handwritten or typed. They also must be signed by plaintiff to comply with the requirements of Federal Rule of Civil Procedure 11. Plaintiff is reminded that the $400.00 filing fee or an *in forma pauperis* application is due by June 25, 2020.

**IT IS SO ORDERED**.

Dated: June 15, 2020

SUSAN ILLSTON
United States District Judge